IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 07-432 |
| JOANN C. YUILL and JOHN C. KAVANAUGH, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Before the Court for disposition are Defendant Joann C. Yuill's ("Yuill") MOTION TO DISMISS/MOTION TO STAY/MOTION TO TRANSFER (*Document No. 8*), with brief in support (*Document No. 9*), Plaintiff's brief in opposition (*Document No. 11*), and Yuill's reply brief (*Document No. 12*). For the reasons that follow, the Court will sever the claims against Yuill from the claims against her co-defendant pursuant to Federal Rule of Civil Procedure 21, and transfer the claims against her to the United States District Court for the Northern District of West Virginia pursuant to 28 U.S.C. § 1404(a).

## Background

On October 2, 2006, Yuill commenced an action against the United States of America ("United States") in the United States District Court for the Northern District of West Virginia.[1] NDWV: 06-150, Doc. No. 1. The action sought a refund and/or an abatement of trust fund liabilities incurred by Alliance Home Health Care, Inc. ("Alliance") and assessed against Yuill personally by the Internal Revenue Service ("IRS"). *Id.*, ¶¶ 1, 7. Yuill was apparently assessed

---

[1] It is proper for the Court to take judicial notice of the filings in the related case pending before the United States District Court for the Northern District of West Virginia. *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426-427 (3d Cir. 1999).

1

with a 100% penalty pursuant to 26 U.S.C. § 6672[2] for Alliance's failure to withhold and pay employment taxes for the quarters ending on September 30, 1997, December 31, 1997, and March 31, 1998. *Id.*, ¶ 2.

Yuill resides in Morgantown, West Virginia. *Id.*, ¶ 5. Alliance, Yuill's former employer, was located in Washington, Pennsylvania. *Id.*, ¶ 7. Alliance is apparently no longer in business. *Id.* On February 11, 2002, the United States informed Yuill that it considered her to be a responsible party under § 6672, and that it had assessed penalties against her on the trust fund portion of the employment taxes allegedly owed by Alliance. *Id.* Yuill served as Alliance's Vice-President of Support Services and Vice-President of Improving Organizational Performance from 1988 through 1999. *Id.*, ¶ 9. She served as Alliance's Corporate Secretary from 1991 through 1999. *Id.*, ¶ 10. During the relevant period of time, John Kavanaugh ("Kavanaugh") was Alliance's President. *Id.*, ¶ 12.

In her complaint against the United States, Yuill sought the entry of an order adjudging that she was not a responsible party for purposes of § 6672 and, hence, not liable for the trust fund recovery penalties attributable to Alliance's deficient assessment. *Id.*, ¶¶ 27-32. She also sought an order compelling the United States to disclose the name of any other person deemed to be liable under § 6672 for the same penalty and whether the Secretary of the Treasury had attempted to collect the penalty from such other person. *Id.*, ¶¶ 33-36. These disclosures are required under 26 U.S.C. § 6103(e)(9)[3] upon written request. On December 11, 2006, the United

---

[2]The relevant portion of the statute provides: "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over." 26 U.S.C. § 6672(a).

[3]The applicable statutory language provides: "If the Secretary determines that a person is liable for a penalty under section 6672(a) [26 U.S.C. § 6672(a)] with respect to any failure, upon request in writing of such person, the Secretary shall disclose in writing to such person–(A) the name of any other person whom the Secretary has determined to be liable for such penalty with respect to such failure, and (B) whether the Secretary has attempted to collect such penalty from such other person, the general nature of such collection activities, and the amount collected." 26 U.S.C. § 6103(e)(9).

States filed an answer and counterclaim, seeking an order adjudging that Yuill was indebted to the United States for tax assessments, penalties, interest and statutory additions. NDWV: 06-150, Doc. No. 4, ¶ 42.

The United States commenced the instant action against both Yuill and Kavanaugh in this Court on April 2, 2007, claiming that they both refused or failed to pay tax assessments for past taxable periods. Doc. No. 1. One day later, the United States filed a motion to stay in the District Court for the Northern District of West Virginia, seeking a stay of Yuill's action in that Court pending the resolution of the claims presently before this Court. NDWV: 06-150, Doc. No. 15. In support of its motion to stay, the United States explained that it had chosen the Western District of Pennsylvania as the venue for this action because the District Court for the Northern District of West Virginia did not have *in personam* jurisdiction over Kavanaugh. *Id.*, p. 7. The United States conceded that Yuill's action could not be transferred to this Court pursuant to 28 U.S.C. § 1404(a), which permits a district court to "transfer any civil action to any other district or division *where it might have been brought*." 28 U.S.C. § 1404(a)(emphasis added). Except for circumstances not relevant here, a civil action against the United States can only be brought "in the judicial district where the plaintiff resides[.]" 28 U.S.C. § 1402(a)(1). Thus, the District Court did not have the option of transferring Yuill's action to this Court. Yuill opposed the United States' motion to stay on the ground that the liability of herself and Kavanaugh were distinct issues. NDWV: 06-150, Doc. No. 18, p. 7. She argued that the United States was precluded from arguing that its resources should not have to be allocated between two separate actions, since it had created the potential for duplicative proceedings itself by commencing an action in this Court. *Id.*, p. 9.

In a memorandum opinion dated May 10, 2007, the District Court for the Northern District of West Virginia denied the United States' motion to stay. *Yuill v. United States*, 2007 WL 1723320, 2007 U.S. Dist. LEXIS 38445 (N.D.W.Va. May 10, 2007). The District Court recognized that if the United States' action presently before this Court had asserted claims only against Yuill, it clearly would have been duplicative of the action pending in the Northern District of West Virginia. *Yuill*, 2007 WL 1723320, at *2, 2007 U.S. Dist. LEXIS 38445, at *6-7 ("If the United States only asserted claims against Yuill in the Pennsylvania suit, that action

3

would clearly be duplicative of the present action because the claims brought by the United States against Yuill in the Pennsylvania suit are identical to the claims brought by the United States against Yuill in its counterclaim in this case."). Nevertheless, the issue was complicated by the fact that the United States had sued both Yuill and Kavanaugh in this action, whereas the District Court for the Northern District of West Virginia could not exercise *in personam* jurisdiction over Kavanaugh. *Yuill*, 2007 WL 1723320, at *3, 2007 U.S. Dist. LEXIS 38445, at *7 ("The United States could not file a third-party complaint against Kavanaugh in this case because the Court does not have personal jurisdiction over Kavanaugh."). Although the District Court noted that discovery regarding the assessments allegedly owed by Yuill "may minimally overlap" with discovery regarding the assessments allegedly owed by Kavanaugh, the District Court concluded that determinations as to whether Yuill and Kavanaugh were responsible parties needed to be made "upon the facts and circumstances specific to each individual and each specific tax assessment." *Yuill*, 2007 WL 1723320, at *4, 2007 U.S. Dist. LEXIS 38445, at *10. The District Court concluded its analysis by observing:

> Based on the procedural history of the present matter and the Pennsylvania suit, the Court reasonably concludes that the United States filed the Pennsylvania action solely for its convenience in hopes of consolidating the discovery for its claims against Yuill and Kavanaugh as much as possible. Furthermore, the United States motion to stay could easily be seen as a method through which the United States could obtain its choice of forum and avoid the requirement that refund suits be filed in the district in which the individual taxpayer resides.

*Yuill*, 2007 WL 1723320, at *4, 2007 U.S. Dist. LEXIS 38445, at *12. Hence, the District Court for the Northern District of West Virginia has demonstrated its intention to proceed with Yuill's action against the United States.

The United States' claims against Yuill and Kavanaugh in this case are based not only on assessments related to employment taxes allegedly left unpaid when they worked for Alliance, but for similar assessments related to taxes allegedly left unpaid by Westwood Home Health Care, Inc. ("Westwood"), and Dominion Health Care, Inc. ("Dominion"). Doc. No. 1, ¶ 1. The United States also asserts that Kavanaugh failed to pay employment taxes owed by Community

Nursing Network, Inc. ("Community").[4] *Id.* The Court notes that the United States has amended its counterclaim against Yuill in the Northern District of West Virginia to incorporate the alleged indebtedness of Yuill with respect to Westwood and Dominion. NDWV: 06-150, Doc. Nos. 17 & 19.

On August 20, 2007, Yuill filed a motion to dismiss or stay the United States' action against her in this Court. Doc. No. 8, ¶ 6. In the alternative, Yuill asks this Court to transfer the claims against her to the District Court for the Northern District of West Virginia pursuant to 28 U.S.C. § 1404(a). *Id.*, ¶ 7. The United States opposes Yuill's motion to dismiss, stay or transfer. Doc. No. 11. It is this motion which is currently pending before the Court and is, consequently, the subject of this memorandum opinion.

### **Discussion**

Yuill argues that this Court should not adjudicate the United States' claims against her because of the "first-filed" rule. Doc. No. 9, pp. 6-11. Pursuant to that rule, when two federal district courts have concurrent jurisdiction over a matter, the court which first obtains jurisdiction over the matter should proceed to adjudicate it. *Equal Employment Opportunity Commission v. University of Pennsylvania*, 850 F.2d 969, 971-972 (3d Cir. 1988). The rule is "designed to promote sound judicial administration and comity among federal courts of equal rank[,]" and it is "applicable where the parties have instituted competing or parallel litigation in separate federal courts." *Zokaites v. Land-Cellular Corporation*, 424 F.Supp.2d 824, 838 (W.D.Pa. 2006)(citations omitted). Even where the rule is applicable, however, "courts are to avoid 'wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith or forum shopping." *Id.* at 838, quoting *Equal Employment Opportunity Commission*, 850 F.2d at 972. Thus, courts retain the authority to depart from the first-filed rule under unique circumstances, such as where "the second-filed action is further along than the first

---

[4]The Court infers from the discussion in Yuill's brief that Alliance was the parent corporation of Westwood, Dominion and Community. Doc. No. 9, p. 1 ("This case arises out of tax liabilities assessed by the Internal Revenue Service ("IRS") against Yuill because it deemed her to be a responsible officer for three separate healthcare corporations while she was employed by their parent corporation."). The record is somewhat unclear as to the precise relationship between these entities.

action," or where "the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another less favorable forum." *Koresko v. Nationwide Life Insurance Company*, 403 F.Supp.2d 394, 399 (E.D.Pa. 2005). Some courts have recognized that complete identity of parties and issues is not required in order for the first-filed rule to apply. *Toy Biz, Inc. v. Centuri Corporation t/a Estes Industries*, 990 F.Supp. 328, 332 (S.D.N.Y. 1998)("Although the two suits are not identical, complete identity of parties and issues is not required for the first-filed rule to apply; the test is whether the second action embraces the issues in the first action."). The touchstone of the inquiry is whether the two proceedings could be fairly characterized as "truly duplicative." *Kedia v. Jamal*, 2007 WL 1239202, at *3, 2007 U.S. Dist. LEXIS 30343, at *8 (D.N.J. April 25, 2007)("However, the Third Circuit Court of Appeals has interpreted the 'first-filed' rule narrowly, holding that it only applies to 'truly duplicative' proceedings.").

The Court does not understand the United States to quarrel with Yuill's contention that the claims against her in this case are truly duplicative of the United States' counterclaim currently before the District Court for the Northern District of West Virginia. The United States apparently concedes that these two cases are, in fact, duplicative. Doc. No. 11, p. 3 ("Yuill had the chance to avoid duplicative litigation when the United States moved to stay the action in West Virginia and she chose not to take it."). Nevertheless, the United States contends that Yuill's motion should be denied on the ground that this Court, unlike the District Court for the Northern District of West Virginia, has *in personam* jurisdiction over both Yuill and Kavanaugh. *Id.*, pp. 3-4. It is clear from the language of the complaint that the United States chose to pursue its claims in this Court precisely because both Yuill and Kavanaugh are subject to the personal jurisdiction of the Pennsylvania courts pursuant to 42 Pa.C.S. § 5322(a)(1). Doc. No. 1, ¶¶ 6-7. This Court's personal jurisdiction over Yuill and Kavanaugh is, of course, coextensive with that of the Pennsylvania courts. *Fed. R. Civ. P. 4(k)(1)(A)*.

There is considerable tension between the United States' concession that these proceedings (as they relate to Yuill) are duplicative of the proceedings in the Northern District of West Virginia and its insistence that this Court should nevertheless proceed to adjudicate the matter. Doc. No. 11, pp. 3-4 ("This Court is a proper forum for this case as it has jurisdiction over all the parties and is the only Court that can provide an adjudication of all the issues with

6

respect to all of the parties in one place."). It is noteworthy that the United States cites to no authority in support of its position. *Id.*, pp. 1-4. What the position of the United States essentially boils down to is a bald assertion that Yuill should not have opposed its motion to stay the case in West Virginia (a case which, as the United States concedes, could not have been transferred to this Court), and that *she* created the potential for duplicative proceedings by successfully opposing its motion to stay her action in West Virginia. The United States takes this position despite the reality that Yuill could not have filed her claim anywhere other than in the Northern District of West Virginia, and that Yuill's action was commenced six months *before* the United States commenced this action. *Caleshu v. Wangelin*, 549 F.2d 93, 95-96 (8th Cir. 1977)(holding that refund suits brought by taxpayers may be brought only in the plaintiff's district of residence, since 28 U.S.C. § 1402(a)(1) expressly provides that a civil action in a district court against the United States may be prosecuted only "in the judicial district where the plaintiff resides"). Perhaps the United States would like to pursue its claims against Yuill and Kavanaugh in the same venue, but it makes no argument as to why that is necessary. The District Court for the Northern District of West Virginia determined that the United States had *not* demonstrated why it needed to pursue both cases in the same venue, *Yuill*, 2007 WL 1723320, at *4, 2007 U.S. Dist. LEXIS 38445, at *10 ("A review of the complaint filed by the United States in the Western District of Pennsylvania demonstrates that the Pennsylvania action involves the issue of whether Kavanaugh is the responsible party for tax liabilities that have not been assessed against Yuill."), and the United States makes no attempt to explain to this Court why it cannot proceed against each individual separately. Doc. No. 11, pp. 1-4.

The Court is convinced that any future proceedings involving Yuill in this District would be duplicative of the proceedings currently underway in the Northern District of West Virginia. Indeed, the United States apparently concedes as much, relying only on its preference to proceed against Yuill and Kavanaugh together as a basis for opposing Yuill's motion before this Court. *Id.* There is no dispute that Yuill commenced her action in the Northern District of West Virginia before the United States commenced this action against Yuill and Kavanaugh. Moreover, it is clear that the District Court for the Northern District of West Virginia intends to proceed with Yuill's action despite the United States' desire to proceed against both Yuill and

7

Kavanaugh in this Court. *Yuill*, 2007 U.S. Dist. LEXIS 38445. Under these circumstances, it would make little sense for the Court to conduct duplicative proceedings related to Yuill's dispute with the United States. The only question that remains is what remedy is appropriate.

In her motion, Yuill relies on Federal Rule of Civil Procedure 12(b)(1), which permits a court to dismiss a claim over which it lacks subject-matter jurisdiction. Doc. No. 8, p. 1. She also indicates that a stay is possible. *Id.* In the alternative, Yuill seeks a transfer of the United States' claims against her pursuant to 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The Court is not convinced that jurisdiction is lacking. Thus, it will not rely on Rule 12(b)(1) as a basis for declining to exercise jurisdiction over the United States' claims against Yuill. A stay would be inappropriate in this case, since there is no need to delay the resolution of the dispute between the United States and Kavanaugh. It would not make sense to stay the claims against Yuill while permitting the claims against Kavanaugh to proceed, since there may be some overlapping factual issues. The most prudent course of action is to transfer the United States' claims against Yuill to the Northern District of West Virginia, where the entire controversy between those two parties can be resolved.

The question of whether the "first-filed" rule applies is separate and distinct from the transfer inquiry required under § 1404(a). *Zimmer Enterprises, Inc. v. Atlandia Imports, Inc.*, 478 F.Supp.2d 983, 989-990 (S.D.Ohio 2007). Nevertheless, the presence of duplicative litigation in another forum weighs heavily in favor of a transfer. The transfer analysis generally accounts for a wide variety of "private interest" and "public interest" factors, but "there is no definitive formula or list of factors to consider" in determining whether a case should be transferred pursuant to § 1404(a). *Jumara v. State Farm Insurance Company*, 55 F.3d 873, 879 (3d Cir. 1995). In the instant case, it is apparent that the dispute between Yuill and the United States will be litigated in the Northern District of West Virginia regardless of whether parallel litigation proceeds in this District. It is difficult to fathom how either party could find it more convenient to litigate this dispute in two fora rather than one. The United States will have to

proceed in both fora in any event, since only Yuill (and not Kavanaugh) moves for a transfer to the Northern District of West Virginia. Doc. No. 8-5 (proposed order disposing of claims only as they relate to Yuill). There is no reason why Yuill should be forced to litigate her case in two places at once. Consequently, the Court believes that a transfer is appropriate.

In her alternative motion to transfer, Yuill simply asks the Court to "transfer the claims against [her] to the Northern District of West Virginia, which is a more convenient forum, in accordance with 28 U.S.C. § 1404(a)." Doc. No. 8, ¶ 7. Nonetheless, the United States has commenced this action against *both* Yuill *and* Kavanaugh, and the claims against each (from a procedural standpoint) constitute one "civil action" for purposes of § 1404(a). *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1518-1519 (10th Cir. 1991). Before effectuating a transfer of the United States' claims against Yuill, the Court must take further action. Federal Rule of Civil Procedure 21 provides:

> **Rule 21. Misjoinder and Non-Joinder of Parties**
> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

*Fed. R. Civ. P. 21.* The plain language of the rule permits a court to sever claims against different defendants *sua sponte*. In *White v. ABCO Engineering Corp.*, 199 F.3d 140, 144 (3d Cir. 1999), the United States Court of Appeals for the Third Circuit declared that "[n]othing within § 1404 prohibits a court from severing claims against some defendants from those against others and transferring the severed claims." Although Yuill does not explicitly move for a severance, the relief which she seeks (i.e., the transfer sought in her alternative motion to transfer) cannot be granted in the absence of a severance. Consequently, the Court will sever the claims against Yuill from the claims against Kavanaugh pursuant to Rule 21. Since it would clearly be a waste of judicial resources for this Court to adjudicate the dispute between the United States and Yuill (which is already being adjudicated in the Northern District of West Virginia), the Court will transfer the United States' severed "civil action" against Yuill to the District Court for the Northern District of West Virginia pursuant to § 1404(a).

There is no dispute that the United States could have brought its action against Yuill in

the Northern District of West Virginia. Thus, the statutory prerequisite for transfer is clearly met. 28 U.S.C. § 1404(a). Moreover, as a consequence of the District Court's denial of the United States' motion to stay Yuill's action in West Virginia, the United States must litigate its claims in two fora regardless of how this Court disposes of Yuill's motion. There is no reason why Yuill should be inconvenienced by concurrent litigation in two federal courts. If there are any witnesses who must testify only with respect to the claims related to Yuill, the Court's decision to effectuate this severance and transfer will eliminate the need for them to testify in two separate fora. Any witnesses common to both disputes will need to testify in both fora anyway, since the case in West Virginia will continue to proceed regardless of whether the case in this District involves both Yuill and Kavanaugh or only Kavanaugh. Consequently, the Court believes that this transfer is truly "[f]or the convenience of parties and witnesses[.]" 28 U.S.C. § 1404(a).

Despite the parties' filings accusing each other of forum shopping, the Court does not view the actions of either party as improper. Yuill brought her action in the only forum available to her, and the District Court for the Northern District of West Virginia has determined that she would be prejudiced if her action were to be stayed. *Yuill*, 2007 WL 1723320, at *4, 2007 U.S. Dist. LEXIS 38445, at *11 ("Moreover, because the United States will be conducting discovery on eight separate tax assessments (three against Yuill and five against Kavanaugh) in the Pennsylvania suit, Yuill will experience substantial delay in obtaining a final result to her refund suit and interest will continue to accrue on her alleged tax liability."). The United States sought to litigate its claims against Yuill and Kavanaugh in a venue in which *in personam* jurisdiction was present as to both individuals. Nonetheless, time has now proven that these two disputes should be dealt with separately, and this Court is convinced that a severance and transfer is the appropriate way to dispose of Yuill's motion. The United States' "civil action" against Yuill and Kavanaugh will be severed pursuant to Rule 21, and the severed "civil action" against Yuill will be transferred to the District Court for the Northern District of West Virginia. An appropriate order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 07-432 |
| JOANN C. YUILL and JOHN C. KAVANAUGH, | ) ) ) ) |
| Defendants. | ) |

## ORDER OF COURT

AND NOW, this 5th day of November, 2007, in accordance with the foregoing memorandum opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that Defendant Yuill's Motion to Dismiss/Motion to Stay/Motion to Transfer is **DENIED** insofar as it seeks a dismissal or a stay of the claims against her and **GRANTED** insofar as it seeks a transfer of those claims to the United States District Court for the Northern District of West Virginia. The claims against Defendant Yuill are hereby severed from the claims against Defendant Kavanaugh pursuant to Federal Rule of Civil Procedure 21, and the severed action against Defendant Yuill is hereby transferred to the United States District Court for the Northern District of West Virginia pursuant to 28 U.S.C. § 1404(a).

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: April Morgan Hincy
Email: ahincy@eckertseamans.com

Anne E. Blaess
Email: Anne.E.Blaess@usdoj.gov

Paul D. Kovac
Email: paul.kovac@usdoj.gov

Robert Szwaijkos
Email: rsz@curtinheefner.com