IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | 2:07-cv-432 |
| v. | ) | |
| | ) | |
| JOHN C. KAVANAUGH, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

Pending before the Court is the MOTION OF JOHN C. KAVANAUGH PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE TO (1) REOPEN CASE; (2) TO ENFORCE SETTLEMENT AGREEMENT, OR (3) IN THE ALTERNATIVE, TO DISMISS THE COMPLAINT WITH PREJUDICE AND STRIKE FEDERAL TAX LIENS; AND (4) AWARD SANCTIONS (Document No. 42). By Order dated April 23, 2012, the Court granted the motion in part, and reopened the case to determine whether a binding settlement was reached during the mediation session. Subsequently, Defendant Kavanaugh and Plaintiff United States have filed extensive memoranda of law and have submitted numerous documents on behalf of their respective positions. The motion is ripe for disposition on the merits.

Factual and Procedural Background

On April 2, 2007, the United States, on behalf of the Internal Revenue Service ("IRS"), commenced an action against Defendant John C. Kavanaugh ("Kavanaugh")[1] to collect unpaid federal employment taxes, statutory interest, and penalties. The assessments were made against Kavanaugh individually based upon his relationship with the following four companies involved

---

[1] The Complaint also named JoAnn C. Yuill as a defendant. However, by Order of Court dated November 5, 2007, all claims against Ms. Yuill were transferred to the United States District Court for the Northern District of West Virginia. *See* Document No. 13.

in home nursing care: Alliance Home Health Care, Inc. ("Alliance"); Westwood Home Health Care, Inc. ("Westwood"); Dominion Health Care, Inc. ("Dominion"); and Community Nursing Network ("Community") (hereinafter collectively referred to as "The Companies). In a Memorandum Opinion and Order dated April 29, 2009, the Court granted the United States' motion for partial summary judgment and concluded that Kavanaugh was a "responsible party" for the taxes owed by the Companies. The Court set a schedule for filing pretrial statements and for completion of a mediation that was jointly requested by the parties. Unfortunately, the United States failed to timely file its pretrial statement and the parties did not complete the mediation. On December 1, 2009 the Court entered a rule to show cause why the case should not be dismissed for failure to prosecute.

The United States, in its response, stated: "The United States believes that the mediation will be successful in resolving the outstanding issues in this case and will therefore eliminate the need for a trial." Upon receipt of the United States' response, the Court ordered the parties to conduct a mediation on or before January 30, 2010 and to report the result of that mediation to the Court on or before February 15, 2010. At the request of the United States, the Court granted a one-month extension of time.

The mediation was conducted on March 3, 2010. The Honorable Edward N. Cahn, retired Chief Judge for the United States District Court for the Eastern District of Pennsylvania ("Judge Cahn"), served as the mediator. In confirming his selection as mediator, Judge Cahn stated his understanding that "a high level official in the Attorney General's Office will be available by telephone to confirm proposed settlement arrangements."

The mediation appeared to be successful. Financial terms of the settlement were reached.

Counsel for the United States Anne E. Blaess, who participated in the mediation, discussed the terms in a telephone call with the Office of the Attorney General.  Judge Cahn, in the presence of Kavanaugh, then confirmed with Blaess that the financial terms were acceptable to the United States.  The United States did not communicate any reservations, nor did the parties condition the settlement upon preparation of a written agreement.  The mediation then concluded.

The next day, Blaess sent an email to counsel for Defendant, Robert Szwajkos, which stated:

> I called chambers and let them know that the mediation was successful and that we would file a status report on the 15th letting the Court know where we are, but that hopefully things will be wrapped up.  I will prepare the acknowledgment letter and send it to you shortly.

In an Order dated March 17, 2010, the Court closed the case and explained:  "the court has been advised by counsel for the parties that the above-captioned action has been settled and that the only matters remaining to be completed are the payment of the settlement proceeds and the submission of a stipulation for dismissal under Fed.R.Civ.P. 41(a)."

The United States was to draft a written document to memorialize the agreement reached during the mediation.  On May 4, 2010, after no draft was forthcoming, counsel for Kavanaugh sent an email to Blaess, with a proposed agreement attached, and explained that time was of the essence because the delay had postponed the disposition of two real estate properties.  On May 17, 2010, Blaess responded by apologizing for the delay due to travel, food poisoning and a sick pet, and represented that she would "get you an acknowledgment letter by Thursday."  On May 28, 2010, Szwajkos sent another email, stating that if he did not receive the draft, he would move for dismissal of the case.  On June 1, 2010, Blaess submitted a draft settlement agreement.

Case 2:07-cv-00432-TFM   Document 48   Filed 08/29/12   Page 4 of 14

Szwajkos provided comments immediately. The United States did not respond. The Court scheduled a telephone conference for August 17, 2010 to discuss the matter.

      On August 16, 2010, Blaess sent an email to Szwajkos, which stated:

> I have incorporated your changes into this new letter. The language at the end is standard, but yes, the terms of the agreement are those that were agreed to by the person with the authority to accept the offer.

The same day, Blaess sent another email stating that she would "have a signed copy sent to you for your signature." A draft settlement agreement dated August 24, 2010 (Exhibit Q) was, in fact, prepared by the United States and delivered to Szwajkos. The terms of the settlement were set forth in numbered paragraphs. In summary, the terms included: the United States would retain all payments previously made by Kavanaugh; in addition, Kavanaugh agreed to make a series of periodic payments over the ensuing months totalling $130,000[2]; in exchange for two $20,000 payments the United States agreed to release tax liens on certain properties; upon completion of the $130,000 payments, the remaining unpaid balance of the tax liabilities at issue, including interest, would be abated; and Kavanaugh would sign a consent judgment "to be held by the United States but not recorded or collected on except in the event of default of any of the payments described in this agreement." In the event of a payment default, Kavanaugh's liability was limited to the amount due under the consent judgment less amounts paid under the agreement. Upon execution of the agreement, the case would be dismissed with prejudice.

      Later that day, Blaess sent a third email which stated, in relevant part:

---

[2]Specifically, Kavanaugh was to make two payments of $20,000 within seven months of the settlement; twelve monthly payments of $1,000 commencing on the first day of the month following the settlement; and forty-eight (48) monthly payments of $1,625.00, commencing on the first day of the thirteenth month following the settlement.

> The person who has the authority to accept or reject the offer is aware of the terms of the payments that were discussed, and has said that they will accept the offer on those terms. Those terms have not changed. I never said that I had the authority to settle the case, as I have never said that. What I did say is that I had discussed it with the person who does have that authority, including at the mediation over the phone, and they said they would agree to those terms.

Exhibit P.

During the telephone conference, counsel informed the Court that substantial progress had been made. Szwajkos subsequently informed Blaess that the revised settlement agreement (Exhibit Q) was acceptable to Kavanaugh. In light of this apparent resolution, a followup telephone conference with the Court was cancelled.

On October 22, 2010, the United States sent Szwajkos a revised settlement letter which contained new terms that were not part of the agreement reached at the mediation, notably including a condition that Kavanaugh sign a Consent Judgment for $2,277,368.60. Kavanaugh objected to these revisions and pointed out that his liability was limited to the amount due under the consent judgment, i.e., $130,000. Kavanaugh made a counter-proposal in December 2010 for a single payment of the entire settlement amount. In a letter dated April 4, 2011, the United States sent a letter outlining settlement terms along these lines. Szwarjkos accepted on behalf of Kavanaugh, but the United States failed to finalize this proposal. Periodic correspondence continued throughout all of 2011 in an effort to resolve the case. In February 2012, Blaess requested additional tax returns from Kavanaugh and an updated Form 433-A (financial disclosure statement). After further efforts to finalize the settlement proved fruitless, the instant motion followed.

Legal Analysis

Kavanaugh contends that a binding and enforceable settlement agreement was reached between the parties at the mediation. Kavanaugh further contends that his proposal to pay all of the amounts due in a single payment, rather than in a series of monthly installments, does not materially change that agreement, and would render many of the disputes between the litigants moot. Finally, Kavanaugh seeks sanctions against the United States for its alleged deliberate delay in finalizing the settlement. The United States contends that a settlement has not been reached because: (1) the mediation between the parties was not binding and no final terms were agreed to at that time; and (2) Kavanaugh's proposed terms are materially different than the original terms discussed at the mediation.

In *Standard Steel, LLC v. Buckeye Energy, Inc.*, 2005 WL 2403636 (W.D. Pa. 2005), Judge Conti provided an excellent summary of the legal principles which govern enforcement of an oral agreement reached at a mediation. As relevant to this case: (1) settlements are strongly encouraged as a matter of public policy because they promote the amicable resolution of disputes and lighten the litigation load of the courts; (2) settlement agreements reached through mediation are as binding as those reached through litigation; (3) settlement agreements are construed according to traditional principles of contract law; (4) oral settlement agreements are enforceable; and (5) an oral agreement is enforceable even if the parties intend to reduce the agreement to writing at a later date.

In its post-mediation correspondence, the United States characterized Kavanaugh as having made a "settlement offer" which the United States was entitled to "process in accordance with our usual procedure." Indeed, the United States stated: "We are sure you understand that

unless you receive a formal notice of acceptance from this office, the United States is in no way committed to a settlement." *See, e.g.* Exhibit Q. Similarly, the United States now contends that it is not bound by the agreement reached at the mediation and that the "entire mediation was predicated upon the defendant's financial situation that existed at that time."

The United States' position is fundamentally flawed. As an initial matter, there is no need for an evidentiary hearing because the United States does not dispute the facts regarding the mediation and followup thereto. The United States has the same rights and obligations during a mediation as any other litigant. *See, e.g. Pohl v. United States EPA*, 2010 WL 786918 (W.D. Pa. 2010) ("our independent research failed to disclose a single reported case in which the court had excused the Government from participating in some form of ADR on any grounds") (citations omitted). While neither party was required to settle the case at the mediation before Judge Cahn, both parties, in fact, entered into such an agreement. That agreement is enforceable. *See Standard Steel, LLC*, 2005 WL at 2403636. No conditions or reservations of rights were communicated by the United States to the mediator or to Kavanaugh, nor was settlement made contingent on finalization of a written instrument. To the contrary, over the ensuing months, Blaess confirmed multiple times that an agreement had indeed been reached during the mediation. The United States – like any other litigant – is bound by that commitment. The only task remaining after the mediation was to properly memorialize the agreement.

The United States does not contend that its representatives at the mediation lacked authority and any such contention would be without merit. Judge Cahn had confirmed prior to the mediation that a person with settlement authority on behalf of the United States would be available by phone; when a proposed settlement was reached, Blaess made a telephone call to

obtain approval; and Judge Cahn then confirmed that the financial terms of the settlement were acceptable to the United States and Kavanaugh. The mediation was then concluded and Blaess reported to this Court that settlement had been achieved.

The United States vaguely and conclusorily contends that the proposed settlement terms differ materially from those reached at the mediation. However, the United States identifies only one specific issue - the face amount of the consent judgment – and fails to explain why that dispute is material. In particular, payment by Kavanaugh of the entire $130,000 due would moot the consent judgment issue entirely. Moreover, the United States has not articulated any specific objections to the terms contained in the draft agreement prepared in August 2010 (Exhibit Q) . Indeed, that draft agreement was prepared by the United States and Blaess confirmed by email dated August 16, 2010 that the terms contained therein were acceptable to the person with settlement authority. Kavanaugh has also accepted the terms set forth in Exhibit Q. In sum, the material terms of the agreement reached by the parties during the mediation are discernible by the Court such that the agreement is able to be understood and enforced.

The next question is whether voluntary prepayment by Kavanaugh would represent a material change to the binding agreement reached by the parties. It is odd that the taxpayer is seeking to satisfy his entire outstanding debt and the United States is resisting that effort. As explained above, the settlement agreement at the mediation contemplated a series of periodic payments.[3] Had the initial settlement been finalized in a timely and diligent manner, the majority

---

[3] The alternative settlement proposed by Kavanaugh in late 2010 and reflected in the letter of April 4, 2011 was never executed; appears to be different than the terms agreed upon at the mediation; and therefore, is not enforceable by the Court.

of the payments contemplated therein would have already been made to date[4] and the corresponding tax liens would have been released. Moreover, as Kavanaugh points out, there was no interest component to the settlement, such that prepayment will not reduce the net amount realized by the United States. Indeed, prepayment of the sums due by Kavanaugh does not appear to present any detriment to the United States. Nor has the United States identified any specific objection to such prepayment. Finally, the United States has not pointed to anything that would prevent voluntary pre-payment by Kavanaugh. Indeed, ¶ 9 of Exhibit Q merely states: "**Upon the completion of the payments** described in paragraphs 2, 4, 7, and 8, totalling $130,000; the remaining unpaid balance of the tax liabilities at issue in this case, including interest, will be abated." (Emphasis added). Similarly, the releases of the tax liens in ¶¶ 3 and 5 of Exhibit Q do not reference specific dates, but rather, occur "in exchange for the payment[s] described in paragraph[s] 2 and 4." Thus, the Court concludes that pre-payment is neither mandated by, nor prohibited by, the agreement reached at the mediation by the parties in this case. To be abundantly clear, prepayment of the entire amount due[5] by Kavanaugh would not constitute a breach of the agreement and would immediately trigger the United States' duties to abate the remaining tax balance and release the tax liens.

Finally, the Court addresses Kavanaugh's request for sanctions against the United States. Kavanaugh asks the Court to immediately dismiss the Complaint and void the liens against him. As explained above, the United States' attempt to disavow the settlement it agreed to during the

---

[4]Assuming that payments began in April 2010, Kavanaugh would have paid approximately $78,000 as of August 2012.

[5]The Court notes that the face amount due of $130,000 has since been reduced by $2,201.00 due to the IRA seizure of a 2011 tax refund.

mediation is entirely unfounded.  Similarly, the United States' request for new financial information from Kavanaugh is unjustified.  Moreover, the record reflects – both before and after the mediation – lengthy periods during which the United States and/or its counsel have failed to advance the litigation and settlement in a diligent and timely manner.  This has resulted in additional work, delay and frustration for both Kavanaugh and the Court.  Nevertheless, the sanction requested by Kavanaugh, i.e., immediate dismissal of the Complaint with prejudice, is unwarranted and unnecessary.  It is apparent that the parties entered into an enforceable settlement at the mediation and the Court will enforce that agreement.  In any event, there will be a dismissal of this case with prejudice, albeit in the context of the settlement rather than as a Court-ordered sanction.

     An appropriate Order follows.

                                          McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | 2:07-cv-432 |
| v. | ) | |
| | ) | |
| **JOHN C. KAVANAUGH,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER OF COURT

AND NOW this 29th day of August 2012, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that the MOTION OF JOHN C. KAVANAUGH PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE TO (1) REOPEN CASE; (2) TO ENFORCE SETTLEMENT AGREEMENT, OR (3) IN THE ALTERNATIVE, TO DISMISS THE COMPLAINT WITH PREJUDICE AND STRIKE FEDERAL TAX LIENS; AND (4) AWARD SANCTIONS (Document No. 42) is **GRANTED IN PART AND DENIED IN PART**, as follows:

The motion to enforce settlement is **GRANTED**. The Court finds that the parties entered into an enforceable settlement at the mediation on March 3, 2010, as memorialized in paragraphs 1-13 of a letter prepared by the United States on August 24, 2010 (Exhibit Q), to wit:

1. The United States shall retain all payments previously made by or collected from John C. Kavanaugh related to the trust fund recovery penalty assessed against him under 26 U.S.C. § 6672 for the periods at issue in this case. Kavanaugh agrees to waive any right to pursue a refund action to recover any payments made by or collected from him related to the tax liabilities at issue in this case.

2. Kavanaugh shall make a one time payment to the United States in the amount of $20,000, by cashiers or certified check, within seven months of the date of this

      Order, payable to the "U.S. Treasury," and sent by regular mail to the U.S. Department of Justice, Tax Division, P.O. Box 227, Washington, D.C. 20044 (Attention: Anne Blaess, Trial Attorney), or by overnight delivery to the U.S. Department of Justice, Tax Division, 555 Fourth Street, N.W., # 6120, Washington, D.C. 20001.

3.     In exchange for the payment described in paragraph 2, the Unites States will release its federal tax liens relating to the tax liabilities at issue in this case recorded against the real property located on Amber Road in Mason County, Michigan.

4.     Kavanaugh shall make another one time payment to the United States in the amount of $20,000, by cashiers or certified check, within seven months of the date of this Order, payable to the "U.S. Treasury," and sent by regular mail to the U.S. Department of Justice, Tax Division, P.O. Box 227, Washington, D.C. 20044 (Attention: Anne Blaess, Trial Attorney), or by overnight delivery to the U.S. Department of Justice, Tax Division, 555 Fourth Street, N.W., # 6120, Washington, D.C. 20001.

5.     In exchange for the payment described in paragraph 4, the Unites States will release its federal tax liens relating to the tax liabilities at issue in this case recorded against the real property located at 2912 Eldersville Road in Follansbee, West Virginia.

6.     Provided that each of the payments of $20,000 is paid in respect to the properties identified in paragraphs 3 and 5 respectively, the United States waives any future claim to either real estate parcel in the event of a payment default under this agreement. Acceptance of each payment when received is a full and complete release of the respective real estate parcel.

7.     In addition to the payments described in paragraphs 2 and 4, Kavanaugh will also make 12 monthly payments to the United States in the amount of $1,000.00 commencing on the first day of October 2012, and continuing on the first of every month for 12 months. The total amount of the payments due under this paragraph is $12,000. These payments will be made via automatic debit to the United States Department of Justice.

8.     In addition to the payments described in paragraphs 2, 4, and 7, Kavanaugh will make 48 monthly payments to the United States in the amount of $1,625.00, on the first day of October 2013, and continuing on the first of every month for 48 months. These payments will be made via automatic debit to the United States Department of Justice.

9. Upon the completion of the payments described in paragraphs 2, 4, 7, and 8, totalling $130,000; the remaining unpaid balance of the tax liabilities at issue in this case, including interest, will be abated.

10. Kavanaugh will sign a consent judgment in the amount of $130,000 to be prepared by, and held by, the United States but not recorded or collected on except in the event of default of any of the payments described in this agreement. In the event of a payment default, Kavanaugh shall be liable only for the amount due under the consent judgment less all amounts paid under this agreement.

11. The United States and Kavanaugh acknowledge that this agreement is made in settlement of the above matter and that the execution of this agreement is not an acknowledgment by Kavanaugh of any liability contained in the complaint.

12. In the event that Kavanaugh shall become deceased prior to the completion of the payments described in paragraphs 2, 4, 7, and 8, the estate of Kavanaugh shall have no liability for any unpaid balance due. In the event that Kavanaugh shall become disabled or shall lose his employment, Kavanaugh shall be entitled to a reasonable grace period, not to exceed six months, during the period of disability or unemployment. Kavanaugh shall promptly give the United States written notice of such disability or unemployment and the termination of such disability or subsequent reemployment.

13. All parties will bear their own attorneys fees and other litigation costs.

In accordance with the parties' settlement agreement, this case is hereby **DISMISSED WITH PREJUDICE**. Prepayment of the entire amount due by Kavanaugh would not constitute a breach of the agreement and would immediately trigger the United States' duties to abate the remaining tax balance and release the tax liens. The releases of tax liens and abatement of outstanding liabilities required by the settlement agreement shall be completed by the United States IMMEDIATELY upon receipt of the applicable payment(s) by Kavanaugh. This Court retains jurisdiction for the purpose of enforcing the settlement.

The motion to strike federal tax liens and impose sanctions against the United States is **DENIED** without prejudice.


BY THE COURT:

s/  Terrence F. McVerry
United States District Court Judge


cc:     Anne E. Blaess, Esquire
        Email: Anne.E.Blaess@usdoj.gov
        Paul D. Kovac, Esquire
        Email: paul.kovac@usdoj.gov

        Robert Szwaijkos, Esquire
        Email: rsz@curtinheefner.com